Hitchcock, C. J.
This case is one somewhat singular in its aspects. The bill was filed by the complainant against David Wilson and others, on the 26th day of February, 1845. In this bill Wilson is made defendant, in his character of administrator of the estate of William Sumner, deceased; and the other defendants are the widow of said Sumner, and others, to whom it is claimed that he had fraudulently conveyed, or caused to be conveyed, certain property in said bill specified.
The supplemental and amendatory bill was filed on the 30th of March of the same year, by which Hedges and Miller, executors of William Williamson, deceased, are made defendants. There does not seem to be any great necessity for connecting the parties defendant as is attempted to be done in one case; still, in some aspects of the case, it may, perhaps, be well *445 enough done. In considering the matters in controversy, however, it will be most convenient to look, first, to the case as made in the original bill, and then to the case made in the amended and supplemental bill. For most purposes, at any rate, the record shows two distinct and separate cases, and. causes of complaint.
The original bill sets forth, that in the year 1828, a bill in chancery was filed in the court of common pleas of Fairfield county, to settle up the partnership concern's of James Hampson and John Williamson, who had been doing business underlie name and style of Williamson & Hampson; and which partnership was dissolved by the death of Williamson, in 1820. Co this bill, Wm. Sumner was a party, but died during the pendency of the suit, and the defendant David Wilson, executor of said Sumner, was made party defendant. Said chancery proceeding was continued in the court of common pleas and supreme court, to which latter court it was taken by appeal,, until the November term of the same court, 1844, when a decree was rendered in favor of complainant, as administrator of James Hampson, against Wilson, executor of Sumner, for the-sum of $8,268.35 ; which decree is in full force.
It is further stated in the bill, that Sumner died in 1838, leaving a will, which was duly proved of the 17th day of October of the same year, and letters testamentary granted to the lefendant Wilson. By his will Sumner made his wife, Catharine Sumner, his sole devisee and legatee. That the matters and things to which said decree against Wilson relates, and-upon which the same is founded, accrued before the 1st of November, 1840.
The amount of the assets of the estate of Sumner, as returned by his executor, is next referred to; and it is there-stated that the said Sumner, for several years before his death, was seized in fee of the northwest quarter of section 16, township 15, range 19, in Fairfield county, containing 174 acres; also of in-lot No. 13, in square No. 14, in Lancaster, and of the undivided one-third part of certain 100 acre lots in Licking, *446 .county. That the said Sumner, on the 30th of May, 1838^ for the purpose of defrauding his creditors, conveyed his inter•est in the 100 acre lots to his sisters, Clarissa Sumner and Lucy Due.
Here it is proper to say, that so far as relates to the convey.ance of these 100 acre lots, there is now no controversy, it being admitted that there was nothing fraudulent in the trans.action.
It is further stated, that the said Sumner, for the like purpose of defrauding his creditors, on the 21st of May, 1838, without any consideration, conveyed the west half of the afore.said named quarter section to the defendant, David Wilson, in ■trust, for the sole and separate use and benefit of his wife, Catharine Sumner, and to her heirs, etc., subject to her disposition, either by will or otherwise.
It is further stated, that the said Catharine, as sole devisee and legatee of said Sumner, sold said lot No. 13, in Lancaster, •for one thousand dollars, which consideration was paid by the purchaser, David Sifferd; that the defendant Wilson, immedi■ately upon his appointment as executor, took possession of the said one-half quarter of section 16, and has ever since received the rents and profits, of the value of $250 annually; that ■Catharine Sumner is entitled to dower in the before named real ■estate.
The prayer of the bill is, that the deed to Wilson be declared fraudulent and void; that the dower interest of the defendant ■Catharine, in the half of said quarter of section 16, and of the fund produced by the sale of lot No. 13, be assigned to her; that the said land be sold; and the proceeds applied to the payment of the debts due from Sumner’s estate; that the said Wilson be decreed to account for all moneys which have come ■to his hands, and to make final settlement of the estate; that the said Catharine be decreed to account for the said one thousand dollars, the consideration of said lot No. 13, together with such other sums as have come to her hands, in the shape •of rents, as devisee of the said William Sumner: hence, that *447 -all the funds belonging to, or arising out of the estate of William Sumner, be applied to the payment and satisfaction of his debts.
This bill was answered by David Wilson and Clarissa Sumner, and the deposition of one witness has been taken. The controversy in the case, is as to the half quarter section of land conveyed by Sumner to Wilson, in trust for Mrs. Sumner, and the avails of lot No. 13, in Lancaster. She claims in her answer, that the half quarter was purchased with money received ■from time to time, by her late husband, from her father’s estate; and, further, that lot No. 13, in Lancaster, was not more than sufficient to compensate her for money thus by him received. If, in this particular, the answer was responsive to the bill, it might be necessary for the complainant to contradict.it by testimony. But it is not responsive, nor are its allegations in any particular supported by evidence. Upon this point there is not ■one particle of testimony. The fact is apparent, that at the time Sumner conveyed the half quarter to Wilson, he was involved, much beyond his ability to pay. This is manifest from the whole case. That conveyance was without'consideration. The property cannot, in this way, be withdrawn from the creditors. The avails of this land must be appropriated to the payment of the debts of Sumner.
In respect to lot No. 13, in Lancaster, the title was in Sumner at the time of his death. He devised it to his wife. She must take it, subject to the incumbrance of his debts. The most that she can claim is, that, inasmuch as she has sold the property, that sale shall be considered as passing the title, and she held to account for the consideration received, deducting therefrom as much as she would be entitled to receive by way of dower.
We have had much difficulty, however, upon the question, whether this was a proper case for the interference of a court cf chancery. The case made, is not such as would justify us in taking the settlement of the estate of Sumner from the probate court. Possibly, the object which the complainants have in *448 view, might all have been attained in the probate court. That court have power to compel an administrator to perform his duty. If he does not, he is liable upon his bond. Besides, if an administrator, or an executor, misconducts, he may be removed, and another may be appointed in his place. But upon the whole, as in this case there has been a fraudulent conveyance of property, and the administrator is the trustee constituted by that conveyance, and as there might be doubt whether the court of probate would not be compelled, notwithstanding the conveyance of the devisee, to order the re-sale of the lot in Lancaster, we have concluded to take jurisdiction, and a decree, upon this branch of the ease, may be entered for com plainant.
The amended and supplementary bill sets forth that in 1805, James Hampson and John Williamson entered into partnership, describes the nature of that partnership, and that it continued until June, 1820, when it was dissolved by the death of Williamson. That Williamson, at the tim€L.of his death, had no property except some real estate, which was not partnership property. That William Williamson and William Sumner were appointed administrators, of the estate of John Williamson, and executed a joint bond. That they took possession of the property in the possession of John Williamson at the time of his death, both the partnership property and his own individual property. Had the personal property and choses in action inventoried, appraised, etc. That they continued to manage and dispose of the property, both partnership and individual, until 1838, when Sumner died, and when a receiver was appointed by the court, to receive and manage the partnership property.
The bill in chancery for the settlement of the partnership concern, referred to in the original bill, is there referred to. The bill in that case was filed in 1828, or 1829, by William Williamson and William Sumner, against Hampson, and in the progress of the case, the said administrators accounted with Hampson for the partnership funds which they had received.
*449 The cause was continued from term to term, until the No vember term of the supreme court, 1844. In the meantime, Hampson had died, and the complainant was appointed his administrator. Sumner had died, and David Wilson, his executor, was made party.'
At the November term of the supreme court, 1843, it was-determined by decree of the court, that the partnership funds, which had come into the hands of the said Williamson and Sumner, and for which, as between themselves, the said Williamson ought to account, had been by him applied to the payment of partnership debts.
At the November term of the same court, 1844, it was, by alike decree, ascertained that there was due from Wm. Sumner $8,268.35, for which sum a final decree was entered against. Wilson, executor of Sumner, to be made from Sumner’s estate. In this decree, Williamson is not named.
It is next alleged, that since' the rendition of the decree, Williamson has died, and the defendants Hedges and Miller have been appointed his administrators. That the estate of Sumner is insolvent, and unable to respond to the decree.
The bill next goes on to state in substance the following facts : At the November term of the supreme court, 1842, William. Williamson recovered a judgment against Hampson for $2346.-06, and costs. The ground of recovery was, that Williamson indorsed a note for Hampson to the United States Bank, which, he was compelled to pay, and brought this suit to recover the amount thus paid for Hampson. It is charged that the loan*, thus effected, was to meet partnership debts; that it was made under a distinct agreement between Williamson and Hampson, that it should be paid out of partnership effects, in the hands-of Williamson and Sumner, which was not done. That the-administrators of Williamson are threatening to collect the judgment, notwithstanding the large amount found to be due by the decree aforesaid, on account of said partnership. The complainant then insists that the estate of William William *450 son is equally liable, in equity, with the estate of Sumner, for the balance so established, or, at any rate, to make up the bal anee which shall remain after the estate of Sumner is exhaust-, ■ed, and it is said that such balance will far exceed the amount ■of the judgment. )£p ,-t
The prayer of the bill is, that the defendants Hedges and Miller, may be enjoined from proceeding to collect said judgment until the final hearing of the cause, and that on the final hearing, they may be decreed and ordered to execute the former decree, and to pay to the complainant such part of the said §8268:35 as the estate of Sumner will not pay, deducting therefrom the amount of the judgment.
This bill was answered on the 25th August, 1846, by the •defendants Hedges and Miller.
They know nothing personally of the matters charged in the bill, but have been informed of the existence of the partnership of Hampson & Williamson; of its dissolution by the death •of Williamson; of the appointment of William Williamson and William Sumner, as his administrators, but whether they gave a joint or joint and several bond, the defendants “have no knowledge, information or belief,” and if it be material, they •call for proof. Whether Hampson had a right to the possession ■of the partnership property, they submit to the court as a question of law, but say they have been informed and believe that the letters of administration were granted at the request of Hampson, and the property of the partnership put into theii hands with his assent.
They admit the recovery of the judgment. As to the allegation, that the consideration of said judgment was a loan made for the purpose of paying partnership debts, and was to be paid from partnership effects, they say they have no personal knowledge, but have been informed that this matter was •set up in defense in the suit at law, which was overruled by the court. That after the judgment, Hampson, on the 16th January, 1843, filed his bill in the supreme court of Fairfield ■county, sitting in chancery, against William Williamson, alleg *451 ing, among other things, the matters and things in the bill now stated, and praying an injunction. Williamson answered this bill on the 23d September, 1843, denying the allegations there in contained, or that he had any partnership funds for which he had not accounted. At the'November term, 1845, of the supreme court, the injunction was dissolved, and the bill dismissed. Defendants rely upon this decree of dismissal, the same as if pleaded in bar.
As to so much of said bill as seeks to render the estate of William Williamson liable for the default of said William Sumner, and to set off said claim against the judgment, the defendants say that they are informed that such chancery proceedings were had as are stated in the bill, but that the same are therein very imperfectly stated, and then proceed to set forth those proceedings at great length, up to the time of the final decree, which decree they rely upon as a bar to this suit, the same as if it had been pleaded.
They further deny, for reasons stated in the answer, that if there had been no such decree, the estate of William Williamson could be made liable for the default of William Sumner.
The primary object of this bill seems to be, to enjoin a judgment recovered by William Williamson against James Hampson, in the supreme court in 1842. Most of the matters which are alleged as cause for injunction, might have been set up by way of defense in the suit at law, and as they would have' constituted a good defense, if Hampson failed to set them up, the fault was his, and his representatives cannot go into chancery, and urge the same matters as ground for injunction. If they were set up at law, as is stated in the answer, and the question with respect to the validity of the defense was there settled, this would be an objection to the interference of a court of chancery.
It seems, however, that, in 1843, and during the life of Hampson, a bill was filed to enjoin this judgment, in which substantially the same matters were set up — with, perhaps, one exception — which are now stated, to induce the interfer *452 ence of this court to enjoin the judgment; which bill was an swered, and the cause continued until the November term of the court, 1845, when, upon hearing, the bill was dismissed. About three months thereafter, the present bill was filed. I am mistaken in saying the present bill was filed. It was not this bill, but one to which this is a supplement. The original bill has no reference to this’judgment. I believe the name of William Williamson does not appear in it. On the third of May, 1845, the supplemental bill is filed, reiterating the same matters which had been set up in the bill which had been dismissed in 1845, and, in addition thereto, that the estate of Sumner was insolvent, and that the complainant must lose a part of his decree against 'Sumner’s estate, unless Williamson’s estate shall be compelled to satisfy it; and it is claimed that there is a strong equity that Williamson’s estate should be made liable for Sumner’s default. The desire of the complainant is, that the collection of the judgment against Hampson, which has been already delayed for seven years, shall be still delayed, until he can ascertain what amount can be made from Sumner’s estate, and then, that Williamson’s estate shall be compelled to make up the deficit, deducting therefrom the amount of the judgment. The object, say counsel, and so says the bill, is, to execute the decree against Wilson, the executor of Sumner.
It is proper, therefore, to refer more particularly to the proceedings, which resulted in the decree against Wilson. A partnership had existed between Hampson and John William son, which was dissolved by the death of the latter, in 1820. By the death of Williamson, Hampson had,, as surviving partner, a right to the control of the property of the partnership; but it does not appear that he exercised, or attempted to exercise, this right. Upon the death of Williamson, William Sumner and William Williamson were appointed his administrators. They had, legally, no concern with the partnership property. But, according to the showing of the bill, the partnership property and individual property were so mingled, that it was *453 difficult to make a distinction. Hampson, the surviving partner, so far as we know, left the thing to take its course. He did not assert his claim to the partnership property, but permitted the same to go into the hands and to be disposed of by the administrators. As before remarked, it was his right, nay, I may say, it was his duty to see to, and to take care of this property. It was not the property to administer upon which the administrators were appointed.
Things remained in this situation until 1828 or 1829, when the administrators, finding it impossible to settle the estate of Williamson, without having the partnership concern settled, filed a bill against Hampson to effect that object. This bill was answered by Hampson, I think, in 1833, and he afterwards filed a cross bill. The case was disposed of in the court of common pleas, and appealed to the supreme court. It continued in the supreme court until 1844. During its pendency, Sumner, one of the original complainants, died, Hampson, the defendant, died, and if Williamson, the other complainant, did not die before the final decree, he certainly did soon afterwards. It is unnecessary to state the numerous orders and interlocutory decrees. The case was eventually referred to Joseph Howard, who made a very voluminous report, upon which the decree in the case is based.
At the November term, 1843, of the supreme court, that court, acting upon the report of Howard, the special master, found and decreed, in substance, that the said William Williamson had fully paid out and accounted for all moneys and assets which had at any time come to his hands, in his said capacity of administrator or otherwise, arising out of the said partnership assets or the individual assets of the said John Williamson. The court also, at the same term, found that there was due from said Sumner, $8268.35, arising out of the assets of said partnership, and the question, whether a decree should pass against Williamson for the deficit of Sumner, was reserved to the next term of the court, to which term the cause was continued.
*454 At the next term of the court, a decree was entered against Wilson, executor of Sumner, for the amount of the aforesaid deficit, with interest from the November term preceding, but no decree was entered against Williamson. And thus the case was finally disposed of.
Now it is claimed that the decree should have been both against Williamson and Sumner, or at least, if against Sumner in the first instance, that it should have been so framed that Williamsom should be liable, provided Sumner’s estate should fail in making payment. And this, it is said, would be executing the decree. It seems to the court it would be making a new decree, a decree which the court, hearing the whole case, seems to have thought was not warranted by the circumstances disclosed.
But it is said it would be equitable, because these administrators signed a joint bond. If such were the fact, and we do not know whether it was so or not, I do not see how it could affect the equity of the case. Possibly it might affect the law of the case. There certainly can be no very strong equity in compelling one trustee who has faithfully accounted to the last cent, to answer for the default of his co-trustee, especially if it does not appear that he who has accounted, has been guilty of any neglect or misconduct.
Judge Story, in his Treatise upon Equity Pleadings, (sec. 429,) in speaking of bills to carry decrees into execution, says such bills may be sustained, “ where, from neglect of parties, or some other cause, it becomes impossible' to carry a decree into execution, without the further decree of the court. This happens generally where parties having neglected to proceed upon the decree, their rights under it become so embarrassed, by a variety of subsequent events, that it is necessary to have the decree of the court, to settle and ascertain them.”
The only embarrassment in the case under consideration, is, that the individual against whom the decree was rendered, is unable to pay. This embarrassment, when the decree was *455 originally entered, was precisely the same as it is now. There lias been no change of circumstances.
In the next section he says: “ The court in these cases, in general ' only enforces, it does' not vary, the decree. Bu under the circumstances it has sometimes considered the original directions, and varied them in case of mistake.”
In the case now under consideration, there is, so far as we can see, no mistake. The court decreed precisely what it intended to decree. At least there is nothing from which we can draw any other inference. We are not prepared to say that there was any thing inequitable in the decree, and feel no disposition to change it. Nor do we believe, that in the present case -we have power to do it.
So far as the answer and supplemental bill is concerned, the injunction is dissolved, and the bill dismissed at complainant’s costs.