Johnson, J.
The original action was'brought by defendants in error, to recover of defendant, as an abutting lot owner, an assessment of $386.59 for improving Oregon street in the city of Cincinnati.
The answer denies the validity of the assessment, on the ground that it was made at a higher rate than the limit fixed by law governing assessments by municipal corporations for such purposes.
It is admitted that all the proceedings are regular, the contract legally made with plaintiffs below, the work well and properly done, and accepted by the city, and that all the necessary steps have been taken by the city, in conformity to the contract and the law in force when it was made, to create a legal and binding charge on the abutting property to pay the cost of the improvement. The lot of defendant was.worth more than double the assessment, but the value of the same, as assessed for taxation, was only $260.
*428 The ordinance to grade and improve Oregon street was passed November 6, 1868.
In pursuance thereof the contract with plaintiffs to do the work was made December 23, 1868.
The ordinance to pay for the improvement by the assessments was passed'November 18, 1870.
The law of the state in force at the time the contract was made, providing for the improvement of streets and limiting the taxes to be assessed by municipal corporations on lot owners therefor, was the act of February 21, 1866 (S. & S 803), the proviso of which reads as follows: “ That in nc case shall the tax levied and assessed upon any lot or lands for any improvement authorized by this section amount to more than fifty per centum of the value of said lot or land, to be estimated after the improvement has been made, and all the cost of said improvement, exceeding the said per centum, that would otherwise be chargeable on said lot or land shall be paid by the municipal corporation out of its general revenue.”
The Municipal Code, sec. 543, continues the same provision, and in the repealing clauses of that code the.act of February 21, 1866, is repealed. This code was passed May 7,1869.
On April 18,1870, section 543 was amended (Ohio L. vol. 67, p. 80) as follows : “ In no case shall the tax or assessment specially levied and assessed upon any lot or land for any improvement amount to more than twenty-five per centum of the value of such lot or land as assessed for taxation, the cost exceeding such per centum, that would otherwise be chargeable on such lot or land, shall be paid by the corporation out of its general revenue.”
This statute was in force November 18, 1870, when the ordinance making the assessment to pay for the work was passed and took effect, and it is admitted that if it controls, then the Superior Court erred in holding the assessment valid, but if the law in force at the time the contract was made and the work undertaken controls, then there is no error in the judgment.
*429 It is claimed by plaintiff in error, that the law. of April 18,1870, in force when the assessment ordinance was passed, limits the amount to twenty-five per cent, on the taxable value of his lot, and that there is no saving clause in that act which repeals the original section 543 (which in turn had repealed the act of February 21, 1866), which saved the city the right to levy the higher rate allowed Avhen the contract was made in payment of existing contracts.
On the other hand, the defendant in error claims: That sections 725 and 729 of the code saved to the city the right to make the assessment to complete this contract, but if they do not, then the act of 1870, so far as it affected or took away the power of the city to perform its contract with the contractors, was unconstitutional, as impairing the obligation of a contract.
Under the act of Í870 this lot was liable only for $65 assessment.
Under the act in force when the contract was made the assessment of $386.59 was valid. The difference to plaintiffs below is $221.59 on this lot, which they will lose if the act of 1870 governs, and the city is not bound to make good the deficiency out of the general revenue.
The city, by its contract with Fennell & McG-uire, had bound itself to pay them, at certain rates per quantity, for one thousand five hundred and forty-seven feet of street to be improved according to plans and specifications, and under the direction of the city engineer, “ in consideration of the faithful and entire performance” of the contract by the plaintiff.
In providing the mode of payment is the following clause:
“ But it is expressly and furthermore covenanted and stipulated by and between the parties hereto, that compensation and payment for all work done and materials furnished under the contract shall be made as specified in the ordinance of the city council of the city of Cincinnati, passed the twelfth day of June, in the year eighteen hunclred and fifty, entitled ‘ An ordinance to regulate the collection of special taxes for the improvement of streets, *430 lanes, alleys . . . and to repeal a certain ordinance on that subject,’ and not otherwise. And the city of Cincinnati shall not in any event be liable to pay for any part of said work or of the material used for the same, except such as may properly be chargeable upon city property bounding or abutting the said street, agreeably to the provisions of the ordinance aforesaid.”
In performance of its contract to pay as above stipulated, the city passed an ordinance November 18,1870, “to pay the cost and expenses of improving Oregon street,” the second section of which provides “that the owners of the several lots of land, upon each front foot of which the sum aforesaid is assessed, shall pay the amounts of money by them severally due in that behalf to Einnell and Maguire.”
From the foregoing statement of the case, it appears :
1. That this contract binds the contractors to accept and receive in full payment for their work the assessments made on the lots or land bounding or abutting on the street, which was to be equal in aggregate amount to the cost of the improvement, and in no event was the city to be liable for any part of the cost, except as a property owner. The contractors thus surrendered all claim on the general revenue for any excess of cost over the assessment.
The assessment ordinance was passed in strict accordance with the ordinance to grade and pave, and the contract; and the rate on this lot did not exceed fifty per cent, of the value of the lot, as permitted by the act of 1866, and the original section 543 of the municipal code.
By the express terms of the original ordinance to grade and pave, passed before the contract was made, “ the cost and expense was to be ascertained and assessed according to the provisions of the acts of the legislature and other ordinances of the city on the subject of special taxes.”
The contract to surrender all claims on the city or its general revenues was in consideration of receiving an assessment equal to the cost of the improvement, not exceeding fifty per cent, on the value of the property after im- ■ proved — the limit of such an assessment at that time.
*431 The facts shown by the record are conclusive that an assessment of twenty-five cents on the assessed value of this lot is $221 — less than the contractors were entitled to by the law in force when they made the contract and performed most of the work. It is not supposable that they would have covenanted to surrender all claims against the city, except on condition that they would receive assessments that would be valid, equal to the cost of the improvement.
They must be presumed to have known the law fixing the power of the city to pay in an assessment, and to have contracted with express reference thereto. They were bound to know the facts as to the value of the lots, the cost of the work, the language of the contract, and to have considered the deficiency, if any, that would exist under the law as it then stood. Welker v. Toledo, 18 Ohio St. 455.
Having surrendered all claim for any such deficiency, they have no claim on the general revenue. Creighton v. Toledo, 18 Ohio St. 447; Welker v. Toledo, 18 Ohio St. 452.
It follows that if the act of 1870 controls, the contractors must lose the difference between the amounts that would be raised under the law in force when the contract was made and that after it was completed. It is apparent that this is a material diminution of the amount the contractors were entitled to receive.
It is claimed that, b.y the saving clauses of the municipal code — sections 725 and 729 — the right of the city to make the higher levy, under the repealed act, is saved to the city, so far as to enable it to perform existing contracts.
It is not clear that this is so. We are therefore compelled to inquire whether the act of 1870, so far as it operates to take away from the city the power to comply with its existing contracts is not unconstitutional, as impairing the obligation of a contract.
The obligation of a contract consists in its binding force *432 on the party who made it. This depends on the laws in force when it is made.
These are necessarily referred to in all contracts as forming part of them, as the measure of the obligation to perform them, and as creating the right acquired by the other party to compel performance.
When the contract is once made, the law then in force defines the duties and rights of the parties under it. Any change which impairs the rights of either party, or amounts to a denial or obstruction of the rights accruing by a contract, is obnoxious to this constitutional provision. McCracken v. Haward, 2 Howard, 612; Ogden v. Saunders, 12 Wheat. 259, 302.
In the latter case, Thompson, J., says: “ The obligation of the contract consists in the power and efficacy of the law which applies to and enforces performance of the contract, or the payment of an equivalent of a non-performance. The obligation does not inhere and subsist in the contract, proprio vigore, but in the law applicable to the contract.” Story on Const. sec. 1380; Cooley Const. Law, 285; Sedgewick on Stat. and Const. Law, 603-610.
In Curran v. Arkansas, 15 Howard (U. S.), 319, Mr. Justice Curtis said : “ The obligation of a contract, in the sense in which the words are used in the constitution, is the duty of performing it, which is recognized and enforced by the laws. And if the law be so changed that the means of legally enforcing this duty are materially impaired, the obligation of the contract no longer remains the same.”
One of the tests that a contract has been impaired is that its value by legislation has been diminished.
It is not a question of degree, but of encroaching in any respect on its obligation — dispensing with any part of its force. Planters Bank v. Sharp, 6 Howard, 327; Green v. Biddle, 8 Wheat. 84.
A case quite analogous to this was before the Supreme Court of the United States (Von Hoffman v. City of Quincy, 4 Howard, 535), where it was held that where a statute authorized a municipal corporation to issue bonds and levy *433 a tax to pay them, and persons have bought and paid value for the bonds, the power thus given of taxation is a contract within the meaning of the constitution, and can not-be withdrawn until the contract is satisfied. The state and the corporation, in such case, are equally bound and a subsequent statute, which repeals or restricts the power of taxation so previously given, is, in so far as it affects bonds' bought and held under these circumstances, a nullity. In such case, it is the duty of the corporation to impose and; collect the taxes in all respects as if the second statute had1 not been passed, and if it does not perform that duty,, mandamus will lie to compel it.
The Court says : “ "When the bonds in question were issued, there were laws in force -which authorized and required the collection of taxes sufficient in amount to meet the interest as it accrued from time to time on the entire-debt.
“ But for the act of February 14,1863, there would be no-difficulty in enforcing them.
“ The amount permitted to be collected by that act will be insufficient. ... To the extent of the deficiency the obligation of the contract will be impaired.”
In State ex rel. Souter v. City of Madison, 15 Wis. 30, it was held, “ that vffiere the charter of a city at the time of the issue and sale of bonds made it the duty of the common council ... to levy and collect the amount like other city or ward charges, ... a subsequent act of the legislature, prohibiting the city from levying such a-tax ... for interest on said bonds, would deprive the creditor of the only efficient means of collecting his debt, and would be repugnant to the constitution.” To same effect is Smith v. City of Appleton, 19 Wis. 468.
In this case municipal bonds were issued and disposed of under a law which prohibited the city from thereafter issuing bonds for any other purpose than to pay the bonded debt of the city. It is said that this provision was obviously introduced to induce the creditors to surrender the *434 •old bonds and accept the new. “When accepted by the creditors and the city, and new bonds issued, it constituted a most material element of the new contract. It entered into and became a part of it, and as such is not the subject of legislative repeal or amendment, so as to impair the right or diminish the security of the creditors without their consent.”
In the case before us, the law in force at the time the city obligated itself to make an assessment equal to the contract price of the work, created the obligation of this contract. The act of 1870 impaired that obligation-by depriving the city of the power to perform, without any provision to make good to the contractors the difference.
The city was not bound to make it good out of the general fund, and could not be compelled to do so, under the .authority of the cases cited from 18 Ohio St.
Its obligation was to pay by an assessment, and in no •other way. It could be made liable in no other way without the assent of both parties.
Under section 6 of article 13 of the constitution of the ¡state, “ the general assembly may provide for the organization of cities and incorporated villages by general laws, and restrict their powers of taxation, assessment, borrowing money, contracting debts, and loaning their credit, so as to prevent the abuse of such power.”
This power, however, is subject to the limitation imposed by the constitution of the United States, article 1, ¡section 10, that “ no state shall pass any law impairing the •obligation of contracts;” and, by article 11, section 28, of the constitution of Ohio, which declares that “ the general .assembly shall have no power to pass retroactive laws or laws impairing the obligations of contracts.”
When the legislature has invested the corporation with the power to improve streets, and raise the- money to pay the costs of such improvement by an assessment, and persons have, on the faith of this power and the stipulations •of the corporation, performed the contract, and the con•tractor has become entitled to the consideration, there is a *435 -contract obligation to pay, valid in all respects, that may be enforced. Such a contract is as free from legislative •control as one between individuals. It is wisely limited by the constitutional provisions referred to.
"While it is important that such organizations should at times be subject to legislative control as to taxation and assessment, yet, in view of the influences operating to control their legislation and local policy, and, too often, the absence of that sense of binding obligation which is generally felt by individuals to perform their obligations, it becomes of the highest importance, as a protection to the citizen, to maintain the contract obligations of municipal corporations, unimpaired by legislative or local action, equally with those •of individuals.

Judgment of Superior Court affirmed.

Scott, Chief Judge, Day, Wright, and Ashburn, JJ., •concurred.