## COMPENSATION FOR CARE AND SERVICES RENDERED TO A DECEDENT.

Court of Appeals for Hamilton County.

JOHN R. SAYLER, EXECUTOR, v. LUCY E. SELLERS.*

Decided, March 14, 1914.

*Implied Contract—For Compensation for Services in Caring for an Aged Couple—Action on Agreement to Make Testamentary Provision Barred by the Statute—Quantum Meruit—Evidence as to the Nature of Services Rendered is Evidence as to Their Value—Judgment Embodying Substantial Justice Based on a Wrong Process of Reasoning.*

1. An action does not lie on an agreement to make testamentary provision for compensation for services in caring for the decedent and his wife in their old age, where the suit to enforce the agreement was not filed for more than two years after the appointment of the executor and more than six months, after the rejection of the claim by the executor.

2. But where the court found on all the issues, including *quantum meruit*, for plaintiff and rendered judgment in an amount which embodied substantial justice based upon conclusions which were substantially correct, a reviewing court will not set the judgment aside on the ground that the court erred in a matter of law or logic.

*Peck, Shaffer & Peck* and *Sayler & Sayler*, for plaintiff in error.

*Healy, Ferris & McAvoy*, contra.

JONES, E. H., J.; SWING, J., concurs; JONES, O. B., J., dissents.

The amended petition filed by the plaintiff, Lucy E. Sellers, in the court below concluded with an alternative prayer for one of three different orders or judgments: first, for an order compelling the defendant executor to deliver to her one hundred and fifty shares of the capital stock of the First National Bank of Cincinnati; second, "if this relief can not by law be granted that she recover of defendant the sum of $37,500 the value of

---

*Affirming with modification, *Sellers* v. *Sayler, Executor*, 14 N.P.(N. S.), 1.

said shares''; third, if such relief can not be granted that she recover from defendant the sum of $28,921, being the value of her services less the amount received by her with interest from August 11, 1909. There were allegations in the amended petition upon which this alternative prayer was predicated.

Answers were filed by each of the defendants setting forth substantially the same defense to the amended petition of the plaintiff. The answers are long, containing eight separate defenses, which we will not take space to set out verbatim. The contents of the answer will sufficiently appear from the discussion which follows.

The prayer for delivery of the bank stock or judgment for the value thereof was based upon a written instrument signed by Mr. Van Wormer on the 16th day of September, 1907, of which the following is a copy:

"SEPT. 16, 1907.

"In addition to the seven thousand dollars invested in 3½% Cin'ti viaduct bonds, one hundred dollars invested in a United States Government bond and sixty shares of Cin'ti Street Railway stock, I Asa Van Wormer, give and bequeath to Lucy E. Sellers for taking care of me and my home, at my death, one hundre and fifty shares of First National Bank stock. If Lucy E. Sellers should die before I do, then at my death the one hundred and fifty shares of First National Bank stock goes to her daughter Stella Sellers.

"(Signed)    ASA VAN WORMER."

This was not witnessed, and although testamentary in form no claim is made that it should be treated as a codicil to testator's will. It is claimed, however, in the amended petition that, at the time of its execution, Mr. Van Wormer agreed to make a codicil to his will incorporating its provisions and bequeathing to Mrs. Sellers the bank stock therein mentioned. It is upon this alleged promise that the prayer for the delivery of the stock is based, the claim being that the executor since the death of Mr. Van Wormer has held said stock in trust for Mrs. Sellers.

The testator, Asa Van Wormer, died on the 11th day of August, 1909. John R. Sayler, named as executor in the will, was appointed September 18, 1909. On September 22, 1910, Mrs.

Sellers presented to said executor a claim for $28,921 for labor performed and services rendered to Asa Van Wormer from April 13, 1897, until August 11, 1909. This claim was disallowed October 20, 1910, and on November 30, 1910, the original petition of Lucy E. Sellers, plaintiff below, was filed against said Sayler, executor, in which she sought to recover said sum of $28,921, with interest from August 11, 1909.

The defendant below admitted in his amended answer the presentation and rejection of this claim. In his sixth defense he admits that plaintiff, Lucy E. Sellers, exhibited to him a paper purporting to be the original of said instrument of date September 16, 1907, set out above, and says that:

"Thereupon this defendant orally disputed and rejected the same, and said to the plaintiff that the instrument was of no validity, and refused to indorse thereon his allowance of it as a valid claim against the estate."

Further answering, he claims:

"That the said plaintiff failed to bring an action against this defendant on a cause of action growing out of a failure and neglect on the part of Asa Van Wormer to perform any agreement under or evidenced by said instrument with respect to one hundred and fifty shares of the First National Bank stock within six months thereafter.

"That no other exhibition of said instrument or of a claim under said instrument was made to this defendant.

"Wherefore this defendant says that any claim growing out of or evidenced by said instrument is barred."

In the seventh defense the executor denies that said Asa Van Wormer agreed to make a will giving plaintiff at his death one hundred and fifty shares of stock of the First National Bank of Cincinnati, or that he agreed with the plaintiff that he would have a codicil to his will executed in due form, etc.

In the eighth defense the executor says that he was appointed on the 18th day of September, 1909; that he caused notice of his appointment to be published in a newspaper of general circulation, commencing on the 19th day of September, 1909, as required by statute; that the said plaintiff failed to bring action against said defendant within two years, on a cause of action

growing out of a failure and neglect on the part of Asa Van Wormer to perform an agreement, as set out in the petition.

We think these defenses as to the agreement to make a will or codicil giving Mrs. Sellers the bank stock are a bar to her recovery upon that claim, as it is conceded that the amended petition in which said claim was first sued upon was not filed until more than two years after the appointment of the executor and more than six months after the rejection of said claim by him; the court below was therefore not warranted in basing its judgment in favor of the plaintiff upon this alleged agreement.

The case was submitted below upon all the issues joined, without the intervention of a jury. We say this mindful of the fact that it is contended by counsel for plaintiff in error that the case was tried below only upon the new matters set up in the amended petition, viz., upon the claim for the bank stock or its equivalent.

The record however discloses that evidence was offered in the trial below as to the terms of the contract of employment, and not only describing the services rendered thereunder by Mrs. Sellers for twelve years as the nurse and housekeeper for Mr. and Mrs. Van Wormer, but detailing with particularity the arduous and exacting labor and constant attention that were required of Mrs. Sellers. We can see no reason why it would have been considered necessary by plaintiff to have offered this testimony nor by the court to have spent the time in receiving it, unless it was to be applied to a determination of the claim for services upon *quantum meruit* as originally presented to the executor and as alone sued upon in the original petition and incorporated in the amended petition in the action in the court below. The court in the judgment entry found as follows:

"This cause having heretofore been heard upon the pleadings and evidence and submitted to the court, the court upon consideration thereof *finds the issues joined in favor of the plaintiff and that the facts stated in her amended petition are true.*"

This language is not ambiguous, and embraces with certainty a finding for plaintiff on her claim for *quantum meruit*, as well as upon other issues.

There is no rule which authorizes a reviewing court to reverse a judgment simply because the court which rendered it erred in a matter of law or logic. Section 11364, General Code, provides:

"In every stage of action, the court must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party. No judgment shall be reversed, or affected, by reason of such error or defect. In the judgment of any reviewing court upon any petition in error in any civil action, when it is sought to reverse any final judgment or decree, or obtain a new trial upon the issues joined in the pleadings, such reviewing court shall certify on its journal whether or not in its opinion substantial justice has been done the party complaining, as shown by the record of proceedings, and judgment under review. In case such reviewing court shall determine and certify that in its opinion substantial justice has been done to the party complaining as shown by the record, all alleged errors occurring at the trial shall by such reviewing court be deemed not prejudicial to the party complaining and shall be disregarded and such judgment or decree under review shall be affirmed, or it shall be modified if in the opinion of such reviewing court a modification thereof will do more complete justice to the party complaining."

The questions therefore for this court are: has substantial justice been done; and are the conclusions ultimately reached, regardless of the reasons given, substantially correct?

Following, as we think, the letter and spirit of the section quoted a majority of this court are constrained to affirm the judgment below and to answer these questions in the affirmative.

We have reached this conclusion after careful consideration of all the evidence in the case. Mrs. Sellers under the statute was incompetent as a witness, and her daughter, Mrs. Blaesi, was the only witness to the conversation which took place between Mr. Van Wormer and Mrs. Sellers at the time the contract was made. She testified that Mr. Von Wormer said:

"He wanted my mother to take care of him. Come out there and take care of him, and do for him and Aunt Julia as long as they lived; that if they did this, at his death she would be rewarded, and he knew that she could do anything for him, and that she would be satisfactory in every way, and he would satisfy her in return by giving her at his death enough to keep her the rest of her life without doing any work. So mama came, and I am

not quite sure about the date, but I think it was along about the 11th of April that mama and I went there and took charge of Aunt Julia and Uncle Asa in his home.  *  *  *  so he said if she would remain and do for him, at his death she would get stocks or bonds that would yield an income from $150 to $200 a month, if she would stay and take care of him.'' (Bill of Exceptions, pages 8 and 9.)

This evidence is corroborated by the testimony of James Van Wormer and Mrs. Atherton as to what Mr. Van Wormer had told them as to his arrangement with Mrs. Sellers and what he had agreed to do in conformity thereto, and is not disputed by a word or circumstance in the record. The conversation detailed by James Van Wormer, and found on pages 85, 86 and 87 of the bill of exceptions, shows that the old gentleman at that time (August, 1907, one month before the execution of the unattested codicil) recognized an indebtedness to Mrs. Sellers, and contemplated making some arrangement by which she would receive at his death $50,000 from his estate for her services performed and to be performed.

Within fifteen months from the date of her employment he had made provision for her in his will to the extent of $8,000 and had given her a $1,000 bond. At that time he was seventy eight years of age. He outlived his expectancy, and it not likely that he then expected to live to be ninety years of age. While the bequests and the gift *inter vivos* thus made can not be taken as absolute proof of the value of her services, they show that the old gentleman recognized the extraordinary nature of her labors and did not measure the value thereof by the usual standards or by any prevailing rule or custom. The evidence shows that these bequests were made in compliance with his agreement or promise as testified to by Mrs. Blaesi, and when we witness them, made, as they were so shortly after she entered upon her work, it serves to remove any feeling of surprise or doubt as to his purpose expressed nine years later to give the $37,500 worth of bank stock in further payment under his contract.

The record shows further that Mrs. Sellers knew of each of the testamentary bequests made for her at the time or soon after they were made. She objected strenuously to them as being in-

adequate and not a fulfillment of his promise or of the contract of employment. What did he say or do? Did he deny the agreement as she claimed it existed? No. On the contrary he gave her bonds, stocks, and made codicils in an effort to satisfy her, but to no avail. There was constant trouble about it. He may have thought her demands were unreasonable or exorbitant, but she insisted that he had not kept faith and at one time left him, removing her furniture and apparel to the city. He soon after induced her to return. Her services were apparently considered by him as almost if not quite indispensible. There were quarrels, a fight and much domestic turmoil in the household up to the time that the paper of September 16, 1907, was signed. The record is silent as to any trouble afterwards and the inference follows that both parties looked upon that paper as a settlement of the difficulty. The amount named therein was less than that fixed by him in the conversation with his friend a month before. It must be accepted as his estimate of what his agreement, made in 1897 and since recognized by him, required him to do. We can not see how any better evidence could have been offered as to the value of her services, and as to its admissibility for such purpose there can be no doubt.

Plaintiff below was not required to offer opinion evidence as to the value of the services. He expressly agreed to provide liberally for her, insuring an income sufficient to meet her needs. This promise, together with the unusual and diversified duties of her employment, its uncertain duration, the postponement of payment until his death, all make obvious the futility of such evidence in this case and the reason same was not offered. Evidence as to the nature of the services was evidence of their value. It is not necessary in a suit on a *quantum meruit* to offer more. *McIntyre, Ex'r, v. Garlick*, 8 C. C., 416; *Duhme Jewelry Co. v. Hazen*, 6 C.C.(N.S.), 606.

The amount claimed in the amended petition is $28,921 with interest. This sum was arrived at by charging for the number of days from April 13, 1897, until August 11, 1909, to-wit, 4503 days, at $7 per day, and crediting thereon the sum of $2,600

which Mrs. Sellers had received in cash on account during this time.

On December 14, 1898, Mr. Van Wormer made a codicil to his will by which he gave to Mrs. Sellers United States government bonds of the face value of $7,000. This codicil expressly provided that this bequest was made in consideration of her services in keeping house for him and that it was to be paid to her upon his death in the event that she remained with him until that time. This codicil was afterward revoked or became inoperative for the reason that the bonds named therein were about to be called for redemption, and on May 25, 1907, in lieu thereof he entered into a trust arrangement by which he placed said bonds in care of the Third National Bank of Cincinnati, Ohio, with power to reinvest the amount received for such bonds in other bonds of the United States or of the city of Cincinnati.

Under the powers contained in said deed of trust the trustee at the maturity of the United States bonds surrendered the same and reinvested the proceeds in Cincinnati viaduct bonds to the amount of $7,000, and one United States 3% coupon bond in the sum of $100, and held the same until after the death of Asa Van Wormer, and until the 7th day of February, 1910, when the said trustee transferred and delivered said bonds to Mrs. Sellers.

The trust instrument above referred to contained a copy of said codicil of December 14, 1898, and expressly recited that the trust was created for the purpose of carrying out the said bequest, and as a payment to Mrs. Sellers for services which she had rendered and might render in the future.

Under these circumstances we think that the sum of $7,100 heretofore received by Mrs. Sellers should have been credited upon said account presented to the executor as aforesaid, and the same not having been done, it should now be considered as a credit upon said account in the same manner as the item of $2,600 deducted therefrom by claimant. This reduces the claim of defendant in error to $21,821, and the judgment of the court below should be modified to the extent that it is in excess of this amount.

Plaintiff is entitled to recover the said sum of $21,821 with interest from August 11, 1909.

Judgment affirmed as modified.

JONES, O. B., J., dissenting.

The original petition in this case was the usual one for services on *quantum meruit.* It was superseded by the amended petition which still embodied all that was contained in the original petition, setting up plaintiff's claim under an implied contract and then proceeding further sought in payment for the same services to show an express contract for the transfer and delivery of certain bank stock, and prayed in the alternative, first, for the delivery of that stock; or, if that could not be had, for a judgment for the value of the stock; and if that could not be had, for the value of the services rendered on a *quantum meruit.*

It will be seen that the new matter in the amended petition is not in explanation or in furtherance of that contained in the original petition, but is actually inconsistent with it. If plaintiff had an express contract for this bank stock in payment for her services, she had no implied contract for $7 per day, or whatever their value might be. In *Creighton* v. *Toledo,* 18 O. S., 451, the first paragraph of the syllabus is as follows:

"Where there is an express contract between parties, none can be implied; the maxim *expressum facit cessare tacitum* applies in such cases."

And on page 452, in its opinion, the court says:

"The plaintiff's right to recover is not founded upon a *quantum meruit,* but solely upon an express contract which provides a stipulated mode of payment, and thus excludes the idea of a recovery upon an implied assumpsit. When there is an express contract between parties, none can be implied; the maxim *expressum facit cessare tacitum* applies in such cases."

And in *Crist* v. *Dice,* 18 O. S., 542, in the opinion of the court the following language is used: "No implied obligation inconsistent with the actual agreement can arise," etc., * * * "for *expressum facit cessare tacitum.*"

The allegations of the express contract and the implied contract in the same petition are inconsistent. They are in no sense the same, but are repugnant to each other. They do not constitute two separate causes of action, but are two distinct causes of action pleaded together in the alternative, and relief under one cause of action would prevent the obtaining of it under the other. Plaintiff being uncertain as to which cause of action she might be able to prove and maintain, out of abundance of caution pleaded them both in the one amended petition. And they were both met by distinct denials.

As to the cause of action under the unexecuted codicil for an express consideration, the defendant interposed the bar of the statute both that the action had not been begun within six months after its rejection under Section 10722, General Code, nor within two years after the appointment, under Section 10746, General Code.

I concur with the majority of the court that these sections both constituted a complete bar. *Shahan, Ex'r, v. Swan,* 48 O. S., 25; *Delaplaine v. Smith,* 38 O. S., 413; *Pollock v. Pollock,* 2 C. C., 140.

The only recovery would, therefore, be sustained under an implied contract, as set out in the original petition.

In my opinion there was no consideration given by the court below to the claim under the implied contract, nor any determination by it as to the value of the services rendered or the amount which plaintiff was entitled to receive for same. On the contrary, the court below found that plaintiff was entitled to recover as damages the value of the bank stock which had not been delivered to her in accordance with the agreement which she was barred by the statute from setting up in this case. To my mind this is clear from the words alone of the judgment, and becomes doubly so when we refer to the language of the court below in its opinion as reported in 14 N.P.(N.S.), 1. The judgment below was based upon the finding of the court made in the following language:

"This cause having heretofore been heard upon the pleadings and evidence and submitted to the court, the court upon consider-

ation thereof find the issues joined in favor of the plaintiff, and that the facts stated in her amended petition are true.

"The court further find that the estate of Asa Van Wormer is liable in damages for the value of the stock delivered to the plaintiff in accordance with the agreement in the amended petition set forth, and that therefore there is justly due and owing to the plaintiff from the defendant John R. Sayler, executor of the last will and testament of Asa Van Wormer, deceased, upon the cause of action set forth in the amended petition, the sum of $35,250 and that the plaintiff is entitled to have said sum paid to her out of the personal property belonging to the estate of the said Asa Wormer," etc.

Surely this judgment must be read as an entirety, and it will not do to simply rely upon the general language of the first paragraph of the finding, and from it determine that the court below had necessarily found upon the claim based upon the implied contract for a *quantum meruit*.

It is true that the language states that the court upon consideration of the pleadings and the evidence "find the issues joined in favor of the plaintiff, and that the facts stated in her amended petition are true."

If this language is to be construed as broadly as it has been by the majority of the court, then it necessarily means that the court below found that the express contract to pay bank stock for services had been established, and that the implied contract to pay the reasonable value for the same services had also been established. These two findings are absolutely inconsistent, and this is shown conclusively, to my mind, by the specific language which follows, wherein the court finds "that the estate of Asa Van Wormer is liable in damages for the *value of the stock not delivered* to the plaintiff in accordance with the agreement in the amended petition set forth, and *that therefore* there is justly due and owing to the plaintiff," etc.

Construing these two paragraphs together shows specifically which one of the two inconsistent causes of action put in the alternative in the amended petition was found in favor of the plaintiff to be true. And the value of this stock, as fixed by the testimony of the witnesses, shown in the record, is the amount for which the judgment was entered.

In other words, the cause of action which has been barred is used as a basis for the foundation of the judgment below. While it is true that there is sufficient evidence shown in the record to have enabled a jury or court on submission to determine the value of the services rendered by plaintiff in her action on an implied contract for the value of such services, the record fails to show any consideration of that evidence for the purpose of fixing such value. It will not do to say that the unexecuted codicil furnishes in itself a basis of value, as we have seen, it is eliminated from the case by reason of the bar of the two statutes above mentioned except in so far as it might furnish evidence that the decedent recognized some obligation, whether as a legal liability or as a moral duty.

This paper is not contractual in its form, but is of a testamentary character. The record shows that testator was constantly considering how he should dispose of his large fortune, and it is but natural that plaintiff should have been considered among others as well worthy of his benefaction. The testimony of James Van Wormer as to his conversations with testator indicate that he was not considering the value of plaintiff's services to himself, but rather undertaking to determine what portion of his estate he should bestow upon her, while making generous gifts to other individuals and to numerous charities.

The opinion of the court may be resorted to, to show what was adjudicated. *Topliff* v. *Topliff*, 8 C. C., 55.

In the syllabus of the opinion of the court below it is stated:

* * * "The compensation thus provided was larger than she could have expected on a *quantum meruit*.

* * * "The agreement must be regarded as established and the estate as liable in damages for the value of the stock so promised, notwithstanding her mercenary motive, the excellent bargain she drove, and the defective character of the agreement upon which she relies."

And in the body of the opinion on page 9, the following language is used:

"Except that the agreed compensation is large, and greater probably than could be given in an action for the reasonable value of such services, there would be little hesitation in finding the agreement to be as claimed."

. It therefore seems to me that the judgment below was based entirely upon a wrong hypothesis; that the court found an express contract and therefore gave no attention to any proof as to the value of services under an implied- contract. And while it is the duty of this court, under Section 11364, General Code, to "disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party." I can not bring myself to believe that a trial based upon a wrong theory, wherein the real issue that can be determined by the court is disregarded, and a judgment rendered on an issue which can not under the law be considered, is one where the "substantial rights of the adverse party" are not affected, and this even though the amount of that judgment might possibly coincide with the amount which could have been rendered under an implied contract. It was certainly "the substantial right" of the defendant below to have the trial court consider and determine separately the only claim which plaintiff was entitled under the law to submit to the court, viz.: the claim made under *quantum meruit,* and when the trial below consisted only of the determination of the claim under the express contract (which all the judges of this court agree could not be considered), it can not be said that "substantial justice has been done" to defendant.

The record shows that the plaintiff has rendered services to the decedent for which she should receive liberal compensation, and it would be unfortunate that the settlement of the estate should be unnecessarily delayed by the sending back of this case for retrial. But where the amount plaintiff may be entitled to receive as the value of the services rendered by her has, as I believe, not been considered or determined by the court below, it is, in my opinion, not the province of this court on error to take up that question and determine it from the record as though this were a trial court; nor is it correct for this court to now modify the judgment of the court below by fixing it at the amount claimed in the petition reduced only by the payments which have been admittedly received by plaintiff on account of her services.